UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL A. RILEY,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NOS. C19-1522 JLR<br>CR14-0113JLR<br><br>ORDER DENYING 28 U.S.C.<br>§ 2255 PETITION AND MOTION<br>FOR COMPASSIONATE<br>RELEASE |

## I.   INTRODUCTION

Before the court are three motions—two that Petitioner Michael A. Riley filed in his civil action against Respondent United States of America ("the Government") and one that Mr. Riley filed in the Government's criminal action against him.  Mr. Riley's motions include:  (1) a 28 U.S.C. § 2255 petition to vacate, set aside, or correct his

//

//

//

sentence (2255 Mot. (C19-1522 Dkt. # 1)[1]); (2) an 18 U.S.C. § 3582(c)(1) motion for

compassionate release (Release Mot. (CR14-0113 Dkt. # 142)); and (3) a motion to stay

his 28 U.S.C. § 2255 petition pending the outcome of his motion for compassionate

release (Stay Mot. (C19-1522 Dkt. # 7)).  The court has considered the motions, all

submissions filed in support of and in opposition to the motions, the relevant portions of

the record, and the applicable law.  Being fully advised, the court DENIES both Mr.

Riley's 28 U.S.C. § 2255 petition and his 18 U.S.C. § 3582(c)(1) motion for

compassionate release.  In addition, the court DENIES Mr. Riley's motion to stay his 28

U.S.C. § 2255 petition as MOOT.

## II.    BACKGROUND

On April 14, 2014, the Government charged Mr. Riley with distribution of heroin,

possession of 50 grams or more of methamphetamine with intent to distribute, possession

of 100 grams or more of heroin with intent to distribute, and two counts of possession of

firearms in furtherance of a drug-trafficking crime.  (Indictment (CR14-0113 Dkt. # 1).)

On September 21, 2016, the Government filed a superseding indictment, which added

two more charges of possession of firearms as a convicted felon.  (Superseding

Indictment (CR14-0113 Dkt. # 75).)  The charges in the superseding indictment included

the following seven offenses:

//

//

---

[1] Citations to docket entries in Mr. Riley's civil action against the Government are preceded by the case number C19-1522.  Citations to docket entries in the Governments' criminal action against Mr. Riley are preceded by the case number CR14-0113.

Count 1:  Distribution of heroin in violation of 21 U.S.C. § 841.  This count pertained to Mr. Riley's distribution of 47.16 grams of heroin to a confidential informant on March 27, 2014.  (*See id.* at 1; *see also* 2255 Resp. (C19-1522 Dkt. # 5) at 2.)

Count 2:  Possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841.  (*See* Superseding Indictment at 2.)  This count pertained to Mr. Riley's possession of 446.8 grams of methamphetamine in the safe located at his residence on March 27, 2014.  (*See id.*; *see also* 2255 Resp. at 2.)  This count carried a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).

Count 3:  Possession of heroin with intent to distribute in violation of 21 U.S.C. § 841.  (*See* Superseding Indictment at 2.)  This count pertained to Mr. Riley's possession of 362.3 grams of heroin in the same safe located at this residence on March 27, 2014.  (*See id.*; *see also* 2255 Resp. at 2.)  This count carried a five-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B).

Count 4:  Possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  (Superseding Indictment at 2-3.)  This count pertained to Mr. Riley's possession of five rifles/shotguns stored in the safe at his residence along with the methamphetamine and heroin on March 27, 2014.  (*See id.*; *see also* 2255 Resp. at 2.)  In the same safe, agents seized $13,282.00 cash.  (*See* 2255 Resp. at 2-3.)  The Government alleged three predicate "drug trafficking crimes" in this count—specifically, the offenses alleged in counts 1-3.  (*See* Superseding Indictment at 3.)

//

//

Count 5:  Unlawful possession of firearms in violation of 18 U.S.C. § 922(g).  (*See* Superseding Indictment at 3.)  This count pertained to Mr. Riley's possession of the same five rifles/shotguns listed in count 4.  (*See id.* at 3-4; *see also* 2255 Resp. at 3.)

Count 6:  Unlawful possession of a firearm in violation of 18 U.S.C. § 922(g).  (*See* Superseding Indictment at 4.)  This count pertained to a Glock handgun that Mr. Riley had in his possession at the time of his arrest in downtown Seattle on March 28, 2014.  (Superseding Indictment at 4; *see* 2255 Resp. at 3.)

Count 7:  Possession of a firearm in the furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  (Superseding Indictment at 4-5.)  This count pertained to Mr. Riley's possession of the same Glock handgun he had in his possession at the time of his arrest.  (*See* 2255 Resp. at 3.)  The Government alleged four predicate "drug trafficking crimes" in this Count—specifically, the offenses alleged in Counts 1-3, and attempted possession of a controlled substance with intent to distribute.  (*See* Superseding Indictment at 4-5.)

Count 7 alleged the additional predicate crime of attempted possession of a controlled substance with intent to distribute based on facts at the time of Mr. Riley's March 28, 2014, arrest that the Government argues were consistent with Mr. Riley being on his way to purchase additional quantities of methamphetamine to sell.  (*See* 2255 Resp. at 3 n.1.)  Specifically, the Government alleges that approximately three hours prior to his arrest, at the time Mr. Riley sold heroin to the confidential informant, Mr. Riley told the confidential informant that he needed to "re-up" his methamphetamine supply.  (*See id.*)  Mr. Riley later departed his residence driving his vehicle in a manner

consistent with someone headed to a drug deal—including engaging in high rates of speed and counter-surveillance maneuvers. (*See id.*) Finally, at the time of his arrest on March 28, 2014, Mr. Riley was in possession of $2,120.00 in cash, a digital scale, an empty container similar to the type in which he stored his drugs in his safe, and the loaded Glock pistol (*see id.*; *see also* Plea Agreement (CR14-0113 Dkt. # 100) ¶ 7)—all facts that the Government asserts were consistent with Mr. Riley being en route to purchase additional methamphetamine.

On September 24, 2014, the court found Mr. Riley was suffering from a mental disease or defect that rendered him mentally incompetent to stand trial and ordered him hospitalized to determine whether his competency could be restored pursuant to 18 U.S.C. § 4241. (9/24/14 Order (CR14-0113 Dkt. # 26).) Nearly one year later, the Bureau of Prisons ("BOP") issued a certificate of restoration of competency to stand trial and submitted a psychiatric evaluation and report. (8/31/15 Cert. of Competency (CR14-0113 Dkt. # 31).)

The court scheduled Mr. Riley's trial for November 28, 2016. (*See* 9/19/16 Min. Entry (CR14-0113 Dkt. # 82).) Mr. Riley eventually pleaded guilty to Counts 2, 3, and 4 of the superseding indictment. (*See* 11/16/16 Min. Entry (CR14-0113 Dkt. # 99) (Change of Plea Hearing); Plea Agreement; Hr. Trans. (CR14-0113 Dkt. # 101) (attaching the transcript of Mr. Riley's 11/16/16 change of plea hearing).) Under Mr. Riley's plea agreement, the Government agreed to dismiss counts 1 and counts 5-7 and to reduce the drug quantity allegations in counts 2 and 3, which had the effect of eliminating the mandatory minimum sentence for those counts. (*See* Plea Agreement ¶¶ 3, 8-9; *see also*

Superseding Indictment.)  The five-year consecutive mandatory minimum sentence remained in place as to Count 4.  (*See* Plea Agreement ¶ 3.)  Under the plea agreement, the Government also agreed to recommend a sentence no higher than 180 months (15 years) and Mr. Riley agreed to recommend a sentence of not less than 96 months (8 years).  (*See id.* ¶ 10.)

On March 17, 2017, Mr. Riley filed a motion to withdraw his guilty plea.  (Mot. to Withdraw (CR14-0113 Dkt. # 107).)  Mr. Riley argued that he was misadvised by his defense counsel when his attorney told him that he would face a mandatory term of 30 years if he was convicted of both Counts 4 and 7 of the superseding indictment in violation of 18 U.S.C. § 924(c).  (Mot. to Withdraw at 6.)  Mr. Riley claimed that this advice was incorrect because the predicate acts underlying the two counts were not sufficiently distinct because both cited counts 1-3 as predicate drug trafficking crimes, and therefore, he argued that the counts would have merged for sentencing purposes.  (*Id.*)  As a result, Mr. Riley argued that he would have been exposed to only a total of five-years mandatory minimum sentence for both counts.  (*Id.*)

The Government opposed Mr. Riley's motion maintaining that controlling Ninth Circuit authority foreclosed Mr. Riley's argument.  (Withdraw Resp. (CR14-0113 Dkt. # 110) at 7-8.)  The Government relied upon *United States v. Beltran-Moreno*, 556 F.3d 913, 916-17 (9th Cir. 2009) (citing *United States v. Smith*, 924 F.2d 889, 894 (9th Cir. 1991); *United States v. Fontanilla*, 8489 F.2d 1257, 1259 (9th Cir. 1988)).  (*See* Withdraw Resp. at 7-8.)  In *Beltran-Moreno*, the defendants were convicted of two 18 U.S.C. § 924(c) counts—one alleging predicate drug trafficking offenses of a drug

conspiracy and possession with intent to distribute methamphetamine, and the other

alleging as predicate offenses the same drug conspiracy and possession with intent to

distribute cocaine. 556 F.3d at 916. The *Beltran-Moreno* court held that the Government

was entitled to charge the defendants with two separate § 924(c) counts, and after the

defendants pleaded guilty to those counts, the district court was required to impose

consecutive minimum sentences of five and twenty-five years on top of the ten-year

mandatory minimum that attached to the drug charges. 556 F.3d at 916-17. This court

accepted the Government's argument in response to Mr. Riley's motion on that basis.

(*See* 4/25/17 Min. Entry (CR14-0113 Dkt. # 114); *see also* 4/25/17 Hr. Trans.

(CR14-0113 Dkt. # 131) at 67:20-68:17.) Accordingly, the court concluded that Mr.

Riley did not receive incorrect legal advice and denied Mr. Riley's motion to withdraw

his guilty plea. (*Id.* at 67:20-68:17.)

 On June 27, 2017, the court sentenced Mr. Riley to a 15-year term of

imprisonment and a five-year term of supervised release. (*See* 6/27/17 Min. Entry

(CR14-0113 Dkt. # 122); Judgment (CR14-0113 Dkt. # 123) at 2-3.) On June 29, 2017,

Mr. Riley timely filed a notice of appeal. (Not. of App. (CR14-0113 Dkt. # 124).)

 Mr. Riley raised the same issue on appeal that he raised in his motion to withdraw

his guilty plea. Mr. Riley argued again that his counsel was ineffective because his

attorney provided incorrect legal advice about the penalties he faced if he were convicted

of both the 18 U.S.C. § 924(c) counts as charged in the superseding indictment. Like the

district court, the Ninth Circuit rejected Mr. Riley's argument, stating:

*//*

Defendant's initial lawyer did not misadvise him about the <u>potential</u> statutory minimum sentence, if he were convicted on all counts. Count Four alleged a violation of § 924(c) with three predicate offenses, and Count Seven alleged a violation of § 924(c) with the same three predicate offenses plus an additional predicate offense. "[A] defendant may be convicted and sentenced for multiple violations of § 924(c) so long as each 924(c)(1) count is supported by a separate predicate offense." <u>United States v. Beltran-Moreno</u>, 556 F.3d 913, 916 (9th Cir. 2009) (internal quotation marks and brackets omitted). "Accordingly, the government was entitled to charge the defendants with two separate § 924(c) counts, and, [if the jury had convicted Defendant], the district court [would have been] required to impose consecutive minimum sentences of five and twenty-five years on top of the ten-year mandatory minimum that attached to the drug charges." <u>Id.</u> at 916-17.

(9th Cir. Mem. Op. (CR14-0113 Dkt. # 136) at 3.)

On September 23, 2019, Mr. Riley filed his present 28 U.S.C. § 2255 habeas corpus petition to vacate, set aside, or correct his sentence. (*See* 2255 Mot.) He makes the same arguments he raised before this court in his motion to withdraw his guilty plea and in his appeal to the Ninth Circuit. (*Compare* 2255 Mot. *with* Mot. to Withdraw & 9th Cir. Mem. Op. at 3.) However, he also raises an additional Sixth Amendment argument of ineffective assistance of counsel. (*See* 2255 Mot. at 5.)[2] Specifically, Mr. Riley argues that although his counsel "challenged double jeopardy involving using the same three predicate offenses in both 924(c) counts, . . . [he] failed entirely to challenge the double jeopardy issue involving the fact that [Attempted Possession of a Controlled Substance with Intent to Distribute] is a lesser included offense of [Possession of a Controlled Substance with Intent to Distribute] when both offenses were all successive steps of one criminal undertaking." (2255 Mot. Ex. 1 (C19-1522 Dkt. #1-1) at 2-3.)

---

[2] The court cites to the page numbers generated by CM/ECF—its electronic filing system.

Specifically, Mr. Riley argues that he could not be convicted of both Counts 4 and 7—the § 924(c) offenses—where the fourth predicate offense for Count 7 "was the lesser included offense of possession of the same drug, at the same time, place, involving the same participant in a[n] unconsummated transaction with the [confidential informant] later that night." (*Id.* at 3.)

On January 16, 2020, Mr. Riley filed a motion to stay his 28 U.S.C. § 2255 petition. (*See* Stay Mot.) Mr. Riley indicates that he intends to file a motion for compassionate release under the First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), which recently amended 18 U.S.C. § 3582(c)(1)(A)(i). (*See* Stay Mot. at 1.) As amended, section 3582(c)(1)(A)(i) provides a sentencing judge with jurisdiction to consider a motion from a defendant for a reduction in his or her sentence based on "extraordinary and compelling reasons" whenever "the defendant has fully exhausted all administrative rights to appeal a failure of . . . [BOP] to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *See* 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Riley states that if the court grants his motion for compassionate release, the court should dismiss his 28 U.S.C. § 2255 petition. (*See* Stay Mot. at 1.)

On March 24, 2020, Mr. Riley filed a motion for compassionate release. (*See* Release Mot.) Specifically, Mr. Riley argues that his "diagnosis of HIV-AIDS satisfies the 'extraordinary and compelling reasons' standard of 18 U.S.C. § 3582(c)(1)(A)(i), as elaborated by the Sentencing Commission in U.S.S.G § 1B1.13." (Release Mot. at 2.) Mr. Riley argues that his release is particularly warranted now "in light of the

[COVID-19] pandemic and his compromised immune system stemming from his HIV-AIDS diagnosis." (*Id.*) He also points to his diagnosis with prostate cancer. (*Id.* at 5.) He notes that his condition has deteriorated, and he can no longer control his bowels. (*Id.*) As a result, he wears disposable adult underwear. (*Id.*) Mr. Riley seeks a reduction in his sentence to time-served and immediate release from custody. (*See id.* at 2.) The Government opposes Mr. Riley's motion for release. (Release Resp. (CR14-0113 Dkt. # 148).) The Government argues that Mr. Riley is not eligible for compassionate release under the First Step Act because he fails to demonstrate "extraordinary and compelling" reasons for his release (*id.* at 10-13) and because he remains a danger to the community (*id.* at 13-18).

The court now considers Mr. Riley's motions.

### III.    ANALYSIS

**A.    Compassionate Release**

The court first considers Mr. Riley's motion for compassionate release. (*See* Release Mot.) "'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original; quoting 18 U.S.C. § 3582(b)). As relevant to Mr. Riley's motion, those circumstances are set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to permit an inmate, who satisfies certain statutorily mandated administrative procedures, to file a motion with

//

the district court for compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).  As

amended, the statute now provides:

> (c) **Modification of an imposed term of imprisonment**.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> **********
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (italics added indicating the portion of the statute the First

Step Act amended).

Thus, the First Step Act amended § 3852(c)(1)(A) to allow prisoners to directly

petition a district court for compassionate release, removing the BOP's prior exclusive

gatekeeper role for such motions.  The statute now provides the court with authority to

reduce a sentence upon the motion of a defendant if three conditions are met:  (1) the

inmate has either exhausted his or her administrative appeal rights of BOP's failure to

bring such a motion on the inmate's behalf or has waited until 30 days after the

applicable warden has received such a request;[3] (2) the inmate has established

"extraordinary and compelling reasons" for the requested sentence reduction; and (3) the

reduction is consistent with the Sentencing Commission's policy statement. *See id.*

The Sentencing Commission's policy statement referenced in 18 U.S.C.

§ 3582(c)(1)(A)(i) is found in the United States Sentencing Guidelines ("USSG")

§ 1B1.13.[4] The policy statement provides in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13. Because Mr. Riley is not at least 70 years old and was not sentenced

under 18 U.S.C. § 3559(c), only sections (1)(A), (2), and (3) of the Sentencing

---

[3] The parties do not dispute that Mr. Riley has exhausted these administrative requirements in this case.

[4] The Sentencing Commission is statutorily required to create the referenced policy statement. *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Commission's policy statement are relevant to Mr. Riley's motion. Thus, under the policy statement, Mr. Riley is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

The Sentencing Commission's application notes to this policy statement provide further guidance. Application Note 1 to USSG § 1B1.13 provides that "extraordinary and compelling reasons" for a sentence reduction exist when:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13 cmt. n.1.[5]

---

[5] In subparts (B) and (C), the application note also addresses family circumstances and circumstances involving defendants who are at least 65 years old—neither of which are applicable to Mr. Riley's motion. *See id.* In subpart (D), the application note also provides that the Director of BOP may determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions

1.  Extraordinary and Compelling Reasons

Mr. Riley bears the burden of establishing that compelling and extraordinary reasons exist that justify compassionate release. *United States v. Holden*, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *3 (D. Or. Apr. 6, 2020). The Government argues that Mr. Riley has not met his burden because he is not suffering from a "terminal illness" and none of his medical conditions "substantially diminish" his ability "to provide self-care" within the facility in which he is confined, and thus he cannot meet the strictures of subpart (A) of the Sentencing Commission's application note. (*See* Release Resp. at 10 ("To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (quoting *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-*3 (E.D. Cal. Feb. 12, 2020)).) Indeed, Mr. Riley has not shown that the facility in which he is confined is failing to adequately manage either his HIV/AIDS diagnosis or his prostate cancer. (*See generally* Release Mot.) Thus, these medical conditions, standing alone, do not justify an order requiring Mr. Riley's release.

Further, the Government argues that the present crisis surrounding the COVID-19 pandemic adds nothing to Mr. Riley's motion. (*See* Release Resp. at 11-13.) Although Mr. Riley argues that his underlying health conditions make him more vulnerable to

---

(A) through (C)." *See id.* Mr. Riley does not contend that the Director of BOP has determined that an extraordinary or compelling reason for a reduction in sentence exists in his case.

COVID-19, he has not contracted a COVID-19 infection; and so, ultimately, Mr. Riley relies on the possibility that he may become infected with COVID-19 while confined to justify his release.  (*See generally* Release Mot.)  However, the court agrees with the Government that "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release."  (*See* Release Resp. at 11 (quoting *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (citing USSG § 1B1.13); *United States v. Zywotko*, No. 219CR113FTM60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (same; citing *Eberhart*, 2020 WL 1450745, at *2)).)

In its brief, the Government acknowledges that there are two inmates with COVID-19 at the Federal Medical Center in Butner, North Carolina ("Butner FCM") where Mr. Riley is presently confined.  (*See* 2255 Resp. at 12 (citing https://www.bop.gov/coronavirus/).)  Mr. Riley's counsel states that her review of the same BOP website indicates that the number of inmates with COVID-19 at Butner FCM increased from two to nine cases on April 1, 2020.  (Jones Decl. (CR14-0113 Dkt. # 150) ¶ 3.)  However, the court's review of the same BOP website indicates that as of April 10, 2020, only one inmate and one staff member have tested positive for COVID-19 at

//

//

//

//

Butner FMC.[6]  *See* https://www.bop.gov/coronavirus/ (last visited Apr. 10, 2020).[7]  The

court does not discount the dangers associated with COVID-19 at a detention facility like

Butner FCM.  However, as the Government points out, BOP has protocols in place to

combat the spread of infectious diseases and a detailed plan specifically for COVID-19.

(*See* 2255 Resp. at 12 (citing https://www.bop.gov/coronavirus/ (last visited Mar. 30,

2020)).  Further, Mr. Riley has not presented any evidence indicating that BOP is not

reasonably equipped to handle the challenge of COVID-19 or to provide him with

appropriate medical care if he should become sick.  (*See generally* Release Mot.; Release

Reply.)  As discussed above, to establish "extraordinary and compelling reasons" for a

reduction in his sentence, Mr. Riley must show that he is suffering from either a terminal

illness or a "serious physical or mental condition . . . that substantially diminishes" his

"ability . . . to provide self-care within the environment of a correctional facility and from

which he is not expected to recover."  USSG § 1B1.13, cmt. n.1.  Those circumstances,

however, are not met by the mere elevated risk of contracting a pandemic virus in prison,

---

[6] The confusion may be in part because there are three facilities list on BOP's website with similar names:  Butner Medium I FCI, Butner Low FCI, and Butner FMC.  *See* https://www.bop.gov/coronavirus/ (last visited Apr. 10, 2020).  However, Mr. Riley's counsel confirms in her declaration that Mr. Riley is presently confined at Butner FMC.  (*See* Jones Decl. ¶ 3.)

[7] *See U.S., ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("Under Rule 201, the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies."); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir.2010) (taking judicial notice of information on the websites of two school districts because they were government entities); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 8, 2008) ("Information on government agency websites has often been treated as properly subject to judicial notice")).

even if such a higher risk exists.  The compassionate release provision of § 3582(c)(1) does not authorize the court to release an inmate prophylactically on the mere possibility that he may contract a virus or to modify his sentence based on the mere existence of COVID-19.  There may be factual circumstances involving COVID-19 in a prison or other detention facility that would warrant the modification of an inmate's sentence under § 3582(c)(1), but those circumstances are not presently before this court.

Nevertheless, Mr. Riley argues that in light of the First Step Act's amendments to 18 U.S.C. § 3582(c)(1)(A), the court is no longer bound to the sentencing Commission's policy statement.  (Release Reply (CR14-0113 Dkt. # 149) at 4 ("We ask this Court to find that, in light of the First Step Act, this Court is no longer bound by the policy statement.").)  Mr. Riley further urges the court to independently find that "the COVID-19 pandemic—in combination with [Mr. Riley's] underlying health conditions—constitute 'extraordinary and compelling reasons' that warrant a reduction" in Mr. Riley's sentence.  (*Id.* at 4-5.)

Because the Sentencing Commission's policy statement has not been amended or updated since the effective date of the First Step Act, some district courts have concluded that the Sentencing Commission's policy statement does not apply to inmates' motions for compassionate release and that, in considering such motions, the court is not bound by the policy statement but may independently assess whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3852(c)(1)(A)(i).  *See, e.g.*, *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have

concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release." (internal quotation marks omitted)) (citing out-of-circuit district court decisions); *see also United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4-*5 (N.D. Cal. March 31, 2020) (following *Rodriguez*).

However, the statutory language following incorporation of the First Step Act's amendments still requires the court to find that any sentencing reduction is "consistent with the applicable policy statements issued by the sentencing Commission." 18 US.C. § 3582(c)(1)(A). The First Step Act did not abrogate that statutory requirement. Consistent with this reading of the statute's strictures, the majority of district courts in the Ninth Circuit have rejected Mr. Riley's suggestion that courts should disregard the policy statement found in USSG § 1B1.13 because the Sentencing Commission has not amended the statement following enactment of the First Step Act. *See, e.g.*, *Eberhart*, 2020 WL 1450745, at *2 (concluding that, in the absence of controlling authority on the applicability of USSG § 1B1.13, the court would follow the guidance of the Sentencing Commission); *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020) (recognizing that although USSG § 1B1.13 "has not yet been updated to reflect the procedural changes implemented by the First Step Act," courts nevertheless "universally turn[] to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction"); *Untied States v. Gross*, No. 2:04-CR-032-RMP, 2019 WL 3538967, at *2 (E.D. Wash.

Aug. 2, 2019) (concluding that "the statutory language following incorporation of the First Step Act's amendments sill requires that a Court find that . . . the [sentencing] reduction is 'consistent with the applicable policy statements issued by the Sentencing Commission'"); *United States v. Shields*, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019), *reconsideration denied*, No. 12-CR-00410-BLF-1, 2019 WL 2645028 (N.D. Cal. June 27, 2019).  In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1).  *See Dillon*, 560 U.S. at 824 (stating that a district court may not modify a final judgment and sentence except "in limited circumstances") (citing 18 U.S.C. § 3582(b)).  Based on this analysis, the court concludes that Mr. Riley has not established that those reasons exist here and DENIES his motion.

## 2.  Danger to Others or the Community

In addition, the court independently denies Mr. Riley's motion for compassionate release because he fails to demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  *See* USSG § 1B1.13(2).  Mr. Riley makes no attempt to demonstrate this requirement in his motion. (*See generally* Release Mot.)  In his reply memorandum, however, he argues that "it is counter-intuitive that someone in such poor health and reduced to wearing adult diapers, who is fighting cancer and a life-threatening illness might pose a danger to the community."  (Release Reply at 5.)  Mr. Riley also argues that his efforts to educate

himself in custody (*see id.* at 6; *see also* Release Mot., Ex. 4), his indications of remorse (*see* Release Reply at 6, Ex. B (attaching a letter from Mr. Riley)), and his demonstration of familial support (*id.*, Ex. C (attaching letter from Mr. Riley's brother)) support his contention that he is no longer a threat to the community. As discussed below, the court is not convinced by Mr. Riley's showing.

Under 18 U.S.C. § 3142(g), the court should look to the nature and circumstances of the crime charged and the defendant's history and characteristics, including his character, his physical and mental condition, his family and community ties, his past conduct, his history relating to drug or alcohol abuse, and his criminal history. *See id.* A review of these factors precludes the court from finding that Mr. Riley is not a danger to the safety of others and the community.

The most significant factor leading the court to conclude that Mr. Riley remains a danger to others and the community is his lengthy and serious criminal record. Mr. Riley was 51 years old at the time of the offenses that lead to his current incarceration. As the court relates below, instead of de-escalating with his increasing age, Mr. Riley's criminality escalated in severity and dangerousness. Given this history, Mr. Riley's anemic showing of efforts to educate himself, of remorse, and of familial support do not convince the court that he is no longer a danger to the community.

From 1983-1997, Mr. Riley's criminal convictions involved relatively minor crimes such as selling marijuana, carrying a loaded weapon in a public place, negligent driving, driving under the influence, and resisting arrest. (Am. PSR (CR14-0113JLR

//

Dkt. # 117 (sealed)) ¶¶ 30-35.)  In the late 1990s, Mr. Riley incurred a number of state convictions for identity theft, possession of stolen property, and forgery.  (*Id.* ¶ 36.)

In the early 2000s, Mr. Riley's criminal conduct escalated, and he was convicted in federal court of conspiracy to produce fictitious obligations, identification fraud, and possession of fictitious obligations.  (*Id.* ¶ 37.)  Mr. Riley estimated that he was personally responsible for $30,000.00 in fraud during the two-year conspiracy.  (*Id.*)  Mr. Riley possessed a firearm in connection with the conspiracy and received a sentence enhancement on this basis.  (*See* Release Resp. at 14.)  Mr. Riley did not perform well on supervision.  He consumed both methamphetamine and marijuana while on supervised release.  (Am. PSR ¶ 37.)  The court imposed an additional total of 16 months' imprisonment for various supervised release violations, which included repeated attempts to circumvent drug testing, smuggling various contraband items into the Residential Reentry Center, and possessing unauthorized electronic devices.  (*Id.*)

Once Mr. Riley was released from the foregoing federal sentence, he was in his mid-forties.  Yet, he continued to have various police encounters indicating that he continued to surround himself with firearms and drugs.  For example, on March 7, 2012, Mr. Riley encountered police who arrived at his residence intending to arrest his partner.  (Am. PSR ¶ 40.)  Officers obtained a search warrant for Mr. Riley's suitcase and recovered a loaded handgun, $11,000.00 in cash, 15 grams of methamphetamine, 11 grams of clonazepam, 6.8 grams of oxycontin, 3.2 grams of methadone, psychedelic mushrooms, and 30 grams of marijuana.  (*Id.*)  The officers recovered two additional guns from Mr. Riley's residence, $3,900.00 from Mr. Riley's person, and a variety of

stolen property, including identification cards, electronics, and jewelry. (*Id.*) Two of the three guns that the officers recovered had been reported as stolen. (*Id.*) Ultimately, Mr. Riley was convicted of unlawful possession of the firearm in King County Superior Court. (*Id.*)

On July 22, 2013, Mr. Riley and two others broke into a storage unit and transported some of the property therein to Mr. Riley's residence. (*Id.* ¶¶ 53-54.) On July 17, 2013, a police officer had observed a gun, ammunition, and drug paraphernalia in the storage unit. (*Id.* ¶ 53.) The officer also observed several items of stolen police property. (*Id.*) The police interviewed Mr. Riley, and he consented to a search of his vehicle in which the police located a police Taser gun and cartridge and a Seattle Police identification patch. (*Id.* ¶ 54.)

Several months later, on March 28, 2014, Mr. Riley was arrested for the conduct leading to his conviction and sentence in this case. Officers executed a warrant at his residence and discovered 446.8 grams of methamphetamine, 362.3 grams of heroin, five long guns, including a stolen AK-47 assault rifle, several boxes of ammunition and magazines, and $13,282.00 in cash. (*Id.* ¶ 10.) In a search of his vehicle, officers discovered a Glock .40 caliber semi-automatic pistol with an extended magazine that was fully loaded with ammunition, two additional extended magazines, a collapsible baton, and a ballistic vest. (*Id.* ¶ 11.)

Given his ever-escalating criminal behavior while not incarcerated, the seriousness of his offenses, and his possession of an ever-expanding arsenal over time, the court cannot conclude that Mr. Riley's medical conditions, his statements of remorse, his

efforts to educate himself while incarcerated, indications of familial support, or any other grounds that Mr. Riley submits, mitigate his continuing danger to others and the community.  Thus, on this independent ground, the court also DENIES Mr. Riley's motion for compassionate release.

**B.      28 U.S.C. § 2255 Motion**

Because the court denies Mr. Riley's motion for compassionate release, the court now considers his petition to vacate, set aside, or correct his sentence.  (*See* 2255 Mot.) In large part, Mr. Riley's § 2255 motion raises the same claim that both this court and the Ninth Circuit previously rejected—that Mr. Riley's attorney gave incorrect legal advice that he faced the possibility of conviction on two 18 U.S.C. § 924(c) charges (counts 4 and 7 of the superseding indictment), and if so convicted, he could be sentenced consecutively on those two counts.  (*See generally* 2255 Mot.)  For all the reasons that the Ninth Circuit previously rejected this claim, it remains meritless.  (*See* (9th Cir. Mem. Op. at 3.)

In addition, "[t]he law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a § 2255 motion." Odom v. United States, 455 F.2d 159, 160 (9th Cir. 1972).  The Ninth Circuit has applied this doctrine consistently in rejecting attempts to re-litigate issues in a § 2255 motion that were raised unsuccessfully on direct appeal.  *See, e.g.*, *United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1985) ("In this case, [the petitioner's] Fifth Amendment claim was presented to the Ninth Circuit on direct appeal . . . and rejected on the merits.  That decision is binding on our resolution of the [§ 2255] case."); *United States v. Redd*, 759

F.2d 699, 700-01 (9th Cir. 1985) ("[The petitioner] raised this precise claim in his direct appeal, and this court expressly rejected it.  Therefore, the claim cannot be the basis of a § 2255 motion."); *United States v. Ramirez*, 327 F. App'x 751, 752 (9th Cir. 2009) ("[The petitioner] is barred from using a § 2255 motion to relitigate issues decided on direct appeal.").  Thus, to the extent that Mr. Riley's motion raises the same claim in his § 2255 petition that he pursued unsuccessfully in his direct appeal, that claim is barred here.

However, in his reply memorandum, Mr. Riley argues that he raised an additional and new claim in his § 2255 petition that the Government failed to credit in its response to his motion.  (2255 Reply (C19-1522 Dkt. # 6) at 2-3.)  Mr. Riley argues that his counsel provided incorrect legal advice concerning the § 924(c) offenses because Mr. Riley could not be convicted of both counts 4 and 7 where the fourth predicate offense for count 7 "was the lesser included offense of possession of the same drug, at the same time, [and] place, involving the same participant in a[n] unconsummated transaction with the [confidential informant] later than night."  (2255 Mot. Ex. 1 at 3.)  Mr. Riley argues that his "possession and attempt to possess more methamphetamine were successive steps of a single transaction later that night, and because one offense is a lesser included of the other, [Mr.] Riley cannot be convicted of both."  (2255 Mot. Ex. 1 at 6.)  Mr. Riley maintains that when his attorney advised him otherwise he received ineffective assistance of counsel.  (*See id.*)

The court agrees that this is a different claim than the one that Mr. Riley raised on direct appeal.  Nevertheless, Mr. Riley's § 2255 petition still fails.  To analyze this claim,

the court must review the facts underlying the two predicate offenses at issue here—

possession of methamphetamine with the intent to distribute, which was charged in count

2 and served as one of the alleged predicate offenses for count 4 (*see* Superseding

Indictment at 2-3), and attempted possession of methamphetamine with the intent to

distribute, which was one of the predicate offenses for count 7 (*see id.* at 4-5). The

charge in count 2 was based on Mr. Riley's possession of 446.8 grams of

methamphetamine in a safe located at his residence on March 27, 2014. (*See id.*; *see also*

2255 Resp. at 2.) The fourth predicate offense to count 7—attempted possession of

methamphetamine with intent to distribute—was based on entirely different facts and

occurred several hours later at a different location. At the time of his March 28, 2014,

arrest, the Government alleges that Mr. Riley was on his way to purchase additional

quantities of methamphetamine to distribute. (*See* 2255 Resp. at 3 n.1.) On March 27,

2014, approximately, three hours before his arrest, Mr. Riley sold heroin to a confidential

informant at Mr. Riley's residence. (Am. PSR ¶¶ 7-8; US Sentencing Mem. (CR14-0113

Dkt. # 119) at 2.) The Government alleges that Mr. Riley told that confidential informant

that he needed to "re-up" his methamphetamine supply. (*See* 2255 Resp. at 3 n.1; *see*

*also* 2255 Mot. Ex. 1 at 6 ("According to the Government, [Mr.] Riley has some

methamphetamine when police overheard him tell the [confidential informant] that he

would have to go purchase additional methamphetamine and to come back later to

consummate the transaction.").) Mr. Riley later left his residence and, according to the

Government, engaged in driving tactics that are consistent with someone headed to a drug

deal. (US Sentencing Mem. at 3; *see also* Plea Agreement at 6-7.) When Mr. Riley was

arrested shortly thereafter on March 28, 2014, he was in possession of $2,120.00 cash, a digital scale, an empty container similar to the type in which he stored his drugs in the safe, and a loaded Glock pistol—all of which the Government contends are consistent with him being en route to purchase additional methamphetamine. (*See* 2255 Resp. at 3 n.1.)

In his petition, Mr. Riley relies primarily on *United States v. Palafox*, 764 F.2d 558 (1985). (*See* 2255 Mot. Ex. 1 at 5-6.) In *Palafox*, an undercover agent negotiated to buy heroin from the defendant and asked for a sample to inspect. 764 F.2d at 559. The defendant handed the agent a package of heroin, which the agent promptly returned after removing a small quantity. *Id.* The defendant was immediately arrested and convicted both of possessing heroin with intent to distribute and of actually distributing heroin. *Id.* The Ninth Circuit concluded that the defendant, who was properly convicted on one count of distributing a sample of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of possessing the remainder in violation of the same section, could not be required to serve two concurrent sentences. *Id.* at 562. In holding that there could only be one punishment, the Ninth Circuit reasoned that "each offense [was] committed at virtually the same time, in the same place, and with the same participants." *Id.*

The Ninth Circuit, however, distinguished the outcome in *Palafox* from other instances which might merit separate punishments such as where drug transactions occur on different days or at different times, sales are made from a single package to different individuals, or when the sales occur in different locations. *Id.* at 563. Further, subsequent cases have consistently interpreted the *Palafox* holding narrowly. *See, e.g.,*

*United States v. Fernandez-Angulo*, 863 F.2d 1449, 1455 (9th Cir. 1988) (holding that dual punishments may be imposed whenever the possession charge arises from any action other than passive momentary retention of the drugs following distribution of a sample), *aff'd in part, vacated in part*, 897 F.2d 1514 (9th Cir. 1990) (*en ban*c); *United States v. Palacious*, 835 F.2d 230, 233-34 (9th Cir. 1987) (upholding separate convictions and sentences for passing and possessing counterfeit bills where the defendant was arrested for passing counterfeit bills to the bank and the police discovered additional counterfeit bills on his person during a search incident to arrest); *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 457-58 (9th Cir. 1985) (upholding separate convictions and sentences for distribution of a sample and possession with intent to distribute the remainder where the acts occurred two days apart).

The facts before the court concerning the two predicate offenses at issue demonstrate that the holding in *Palafox* is inapplicable here. Mr. Riley did not distribute methamphetamine to the confidential informant. Rather, on March 27, 2014, Mr. Riley sold 47.16 grams of heroin to the confidential informant. (*See* 2255 Resp. at 2.) Although Mr. Riley allegedly told the confidential informant that he need to re-stock his methamphetamine supply, the predicate charge of possession of methamphetamine with intent to distribute—count 2—is not based on any transaction with the confidential informant, but rather on the quantity of methamphetamine—446.8 grams—that Mr. Riley possessed in a safe at his residence. (*See* 2255 Resp. at 2; *see also* Plea Agreement ¶ 7 ("[Mr.] Riley possessed the above referenced methamphetamine [446.8 grams of methamphetamine] . . . intending that it would be distributed to other persons.").)

Further, when Mr. Riley was arrested the next day, the Government does not assert that he was on his way to meet with the confidential informant, but rather that he was on his way to meet with another unknown person to purchase additional quantities of methamphetamine.  (*See* 2255 Resp. at 3 n.1.)  Mr. Riley's transaction with the confidential informant did not involve the same drug and did not occur at the same time as his alleged attempt to acquire additional methamphetamine for distribution, which forms the basis for the fourth predicate crime underlying count 7—attempted possession of methamphetamine with intent to distribute.  The methamphetamine that forms the basis for one of the predicate offenses underlying count 4—possession of methamphetamine with intent to distribute—was already in Mr. Riley's possession at the time of his March 28, 2014, arrest and stored in a safe on his property.  Thus, the court concludes that the Ninth Circuit's holding in *Palafox* is inapplicable to the facts confronting this court, and Mr. Riley's counsel did not provide incorrect legal advice when he told Mr. Riley that he could be convicted on both § 924(c) charges—counts 4 and 7—and that, if so convicted, he could receive consecutive sentences for those counts.

For the reasons stated above, the court DENIES Mr. Riley's § 2255 petition because the issues its raises were either previously decided adversely to Mr. Riley on direct appeal or are otherwise meritless and contrary to settled Ninth Circuit law.

## C.    The Stay Motion

Mr. Riley brought a motion asking the court to stay his § 2255 petition pending the court's consideration of his motion for compassionate release.  (*See* Stay Mot.)  Because the court has now decided both Mr. Riley's motion for compassionate release as well as

his § 2255 petition, the court DENIES Mr. Riley's motion for a stay of his § 2255

petition as MOOT.

## IV.    CONCLUSION

Based on the foregoing analysis, the court DENIES Mr. Riley's motion for

compassionate release (CR14-0113 Dkt. # 142), DENIES Mr. Riley's § 2255 petition for

habeas corpus relief (C19-1522 Dkt .# 1), and DENIES as MOOT Mr. Riley's motion to

stay consideration of § 2255 petition pending the court's consideration of his motion for

compassionate release (C19-1522 Dkt. # 7).

Dated this 10th day of April, 2020.

JAMES L. ROBART
United States District Judge